UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUBERT STIMSON, | Case No.  14-cv-04425-JCS |
| Plaintiff, | |
| v. | **ORDER ON MOTIONS FOR SUMMARY JUDGMENT** |
| CAROLYN W. COLVIN, | Re: Dkt. Nos., 17, 21 |
| Defendant. | |

## I.    INTRODUCTION

Plaintiff Hubert Stimson seeks review of the final decision of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security (the "Commissioner"), denying his applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act.  For the reasons stated below, the Court GRANTS Stimson's Motion for Summary Judgment, DENIES the Commissioner's Motion for Summary Judgment, and REMANDS Stimson's claim to the Commissioner for a calculation and award of benefits consistent with this Order.[1]

## II.    BACKGROUND

### A.    Procedural Background

On March 31, 2011, Stimson applied for disability insurance benefits and supplemental security income, alleging that he had been disabled since January 1, 2009 due to lower back and knee problems as well as chronic obstructive pulmonary disease ("COPD") and emphysema. Administrative Record ("AR") 190, 223.  The Social Security Administration denied Stimson's claim on July 14, 2011.  *Id.* at 65–66.  On reconsideration, Stimson further alleged high levels of

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

United States District Court
Northern District of California

stress and anxiety. *Id.* at 253–54. The Social Security Administration affirmed the denial on February 2, 2012. *Id.* at 67–68. On March 29, 2012, Stimson requested a hearing before an administrative law judge. *Id.* at 109–11. Administrative Law Judge Timothy Terrill held a brief hearing on November 27, 2012, at which Stimson did not have proper identification. *Id.* at 12, 56–59. The case was reassigned to Administrative Law Judge Amita Tracy (the "ALJ"), who held a hearing on May 7, 2013. *Id.* at 31. The ALJ issued an unfavorable decision on May 24, 2013, finding Stimson not disabled. *Id.* at 9–23. The Social Security Administration Appeals Council denied Stimson's request for review on July 29, 2014, finding no reason to review the ALJ's decision. *Id.* at 1-3.

Stimson filed this action on October 2, 2014 under 42 U.S.C. § 405(g) and § 1383(c)(3), which give the Court jurisdiction to review the final decision of the Commissioner. Compl. (dkt. 1). The parties filed cross motions for summary judgment. Pl.'s Mot. (dkt. 17); Comm'r's Mot. (dkt. 21).

### B.     Stimson's Background

#### 1.     Personal and Employment History

Stimson was 53 years old as of January 1, 2009, the alleged onset date of his disability. AR 69. Stimson graduated from high school in 1973 and served in the U.S. Coast Guard from 1976 to 1980. *Id.* at 224, 240. According to his Work History Report, Stimson worked as a shipping coordinator for Autodesk, Inc. from 1993 to 1996, as an export administrator at Advanced Fiber/Telelabs Communication from 1996 to 2005, as a manager at a Christmas store from 2006 to 2007, and on and off as a part-time handyman from 2008 to February 2011. *Id.* at 34, 45, 237–40.

#### 2.     Medical History

The Administrative Record contains no medical evidence prior to February 2011 or after September 2012. Stimson did not see a doctor until February 9, 2011, when he began treatment at the San Francisco Veteran Medical Center. AR 53–54, 306.

United States District Court
Northern District of California

### a.     Chronic Pain from Lower Back and Knee

In March 2011, medical tests diagnosed Stimson's lower back with moderate multilevel degenerative disc disease with disc space narrowing and osteophytosis, moderate facet sclerosis, and arthritis without obvious significant nerve compression.  AR 320, 381.  Further, a neurosurgeon indicated in November 2011 that Stimson most likely also suffers from lumbar radiculopathy and potentially an L4 nerve root impingement.  *Id.* at 270.

Bilateral knee imaging from March and November 2011 revealed only minimal problems with Stimson's right knee, although medical notes from November 2011 indicate increasingly frequent swelling and buckling as well as sharp localized pain in the medial and lateral joints.  *Id.* at 344, 707.  Stimson underwent physical therapy for his right knee from October to November 2011.  *Id.* at 508.  A knee MRI from December 2011 revealed no evidence of knee problems.  *Id.* at 677.

Dr. Frank Chen examined Stimson in June 2011.  *Id.* at 350–51.  Dr. Chen's report indicates negative examinations for chronic low back pain, chronic pain of both knees, and shortness of breath on exertion.  *Id.* at 351.  He also determined that Stimson had "no functional limitations on a medical basis."  *Id.*

In July 2011, a state agency medical consultant reviewed Stimson's medical record and provided a physical residual capacity assessment.  *Id.* 60–64.  The consultant reported that Stimson could lift and carry 50 pounds occasionally and 25 pounds frequently, sit for six hours and stand or walk for six hours in an eight-hour workday, and occasionally balance, stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, or scaffolds.  *Id.* at 61, 352–53.  The consultant opined that Stimson seemed capable of medium work.  *Id.* at 353.  In January 2012, another state agency medical consultant reported essentially identical findings, but differed in finding that Stimson could frequently—as opposed to merely occasionally—balance, stoop, kneel, crouch, and crawl.  *Id.* at 87, 91–92, 548–49.  The second consultant expressly indicated that great weight was assigned to Dr. Chen's June 2011 opinion.  *Id.* at 90.

In April 2012, Stimson's treating physician Dr. Sabina Hoque from the Veteran Medical Center provided a detailed assessment of Stimson's functional limitations, in the form of a

3

United States District Court
Northern District of California

questionnaire. *Id.* at 562–65.  Dr. Hoque indicated that Stimson could sit for only 20 minutes at one time and only two hours total in an eight-hour work day or stand for more than two hours at one time but only four hours total in an eight-hour work day, that Stimson would need to walk for ten minutes every ninety minutes during a workday, that Stimson will need to take unscheduled breaks during a workday approximately every one to two hours for fifteen minutes, that Stimson could lift and carry twenty pounds rarely and ten pounds occasionally, that Stimson would likely be absent from work about two days per month due to impairments or treatment, and that Stimson could never stoop or crouch, can rarely climb ladders or stairs, and can occasionally twist his body. *Id.*  Although Dr. Hoque did not provide specific evidence in support of each assessment, she indicated that Stimson was diagnosed with lumbar radiculopathy and knee arthralgis, with clinical findings and objective signs of positive straight leg raise test and tenderness along medial joint line with positive patellar grind. *Id.* at 562.  She also reported that Stimson's treatment included injections and physical therapy. *Id.*  Dr. Hoque further indicated that Stimson's impairments were reasonably consistent with his symptoms and functional limitations, *id.* at 563, and noted that the earliest date that her opinion applied to was September 23, 2011, *id.* at 565.

In July 2012, Stimson underwent surgery on his right knee, including arthroscopy and debridement partial meniscectomy procedures. *Id.* at 693.  The post-operation notes indicate that Stimson suffered from chondromalacia and torn meniscus in his right knee. *Id.*  The report also indicates that the level of function in Stimson's right knee prior to surgery was "progressive debility [due to right] knee pain." *Id.*  Stimson was prescribed a cane after the surgery. *Id.* at 686.  A medical report from August 2012 indicates that Stimson was "[a]lready feeling better after his surgery" though he still had "intermittent discomfort" and was taking ibuprofen occasionally. *Id.* at 721.  Stimson deferred additional clinic appointments and discontinued post-surgery physical therapy in September 2012. *Id.* at 720.

### b.    Mental Health

Although the medical records from the Veteran Medical Center indicate potential anxiety and depression, the Veteran Medical Center does not appear to have evaluated Stimson for those impairments.  In January 2012, psychological assistant Deborah von Bolschwing, Ph.D., of Health

4

Analysis, Inc. examined Stimson. *Id.* at 529–31.  In her report, Dr. von Bolschwing assessed that Stimson had no psychological disorders. *Id.* at 530.  Dr. von Bolschwing is a "Registered Psychological Assistant" and her report was signed by her supervising psychologist Dr. Paul Martin. *Id.* at 531.  In February 2012, a state agency psychological consultant reviewed the medical record and concluded that Stimson's mental impairments were non-severe. *Id.* at 88–89. In reviewing the record, the consultant assigned great weight to Dr. von Bolschwing's opinion. *Id.* at 90.

### c.      Other

The Administrative Record indicates that Stimson's impairments also included COPD, obesity, and high blood pressure. *Id.* at 15, 413, 479, 756.  Stimson has not, however, pursued those afflictions as a basis for disability in his present Motion.

### C.      Administrative Hearing

#### 1.      Stimson's Testimony

The ALJ began her examination of Stimson with questions regarding his housing and income.  AR 33–35.  Stimson explained that he was divorced and had two adult children, that he lived in a house together with the owner, that he currently did not have a source of income, and that he had not received any unemployment benefits or worker's compensation since January 2009. *Id.*  When asked about his driver's license, Stimson explained that he sold his vehicles and let the license expire because "[i]t was getting painful to drive." *Id.* at 35.  He further explained that he lives close to and walks to stores, and that he arranges a ride with a friend when he needs go somewhere further from home. *Id.*

When the ALJ asked about his military service, Stimson explained that he served in the Coast Guard for four years, that he did deck duties during his service, and that he had not applied for VA disability benefits because his benefits had "lapsed." *Id.* at 40.

Stimson stated that he can no longer work because of the pain in his lower back which "radiates down the back of [his] legs and [his] knees." *Id.* at 39.  Stimson testified that he is in pain "[p]retty much all the time" and that lying down helps to relieve the pain. *Id.*  He further stated that he takes medication for COPD and high blood pressure as well as ibuprofen for his

United States District Court
Northern District of California

chronic pain.  *Id.* at 39–40.  Stimson testified that the medications are effective with the exception of ibuprofen which was "not doing much good anymore."  *Id.* at 40.  When the ALJ asked about stronger pain medications, Stimson explained that he missed his appointment for such medications and had not made another appointment.  *Id.* at 39.

Stimson testified that he had surgery on his right knee, that the surgery did not improve his chronic pain, and that he was a candidate for surgery for his back and for his knees.  *Id.* at 40–41. Stimson then explained that injections and physical therapy also did not help to relieve his chronic pain, that he wears a brace consistently on his right knee, that he had been using a prescribed cane for over a year.  *Id.* at 41–42.  Stimson denied any mental health issues.  *Id.* at 42.

In regards to his exertional limitations, Stimson testified that he could sit for about 30 minutes at a time, stand for about one to two hours, and walk for about 30 minutes at a time.  *Id.* at 43, 46.  When the ALJ asked about his daily routine, Stimson explained that he "take[s] care of anything personal that needs to be tidied up around the house," that he "take[s] a walk if the weather lets [him] outside," that he occasionally cooks and cleans the kitchen, that he does laundry once a week, and that he does grocery shopping from a store two blocks away and "get[s] small amounts of things at a time."  *Id.* at 43.

In discussing his past employment, Stimson explained that he had worked as an export administrator for about ten years.  *Id.* at 37, 44.  His duties included inspecting and packaging products as well as completing paperwork for shipping.  *Id.*  He testified that this job involved frequently lifting packages between 30 to 60 pounds and that the heaviest weight he had to lift was about 100 pounds.  *Id.*  Stimson further explained that he had worked as a manager at a Christmas store from 2006 to 2007.  *Id.* at 36–37, 46–47.  His duties included receiving and stocking new shipments, training part-time workers, and verifying time cards on a computer.  *Id.*  He testified that this job involved lifting weights of 20 to 30 pounds.  *Id.* at 47.

Stimson testified that he stopped working in 2007 because he left to go to Indiana when his brother passed away.  *Id.* at 36, 44.  He explained that when he returned to California in 2008, his physical condition "had some weight" in his decision to not return to his former employers or occupation.  *Id.* at 44–45.  Stimson also testified that on and off from early 2008 to February 2011,

1   he worked part-time as a handyman for a friend, removing carpet pads and cleaning floors for new

2   floor installations. *Id.* at 34, 45. He stated that he worked about 12 to 20 hours per week, making

3   less than $200 per week. *Id.* Stimson also stated that since January 2009, he had "never really

4   applied for" work other than part-time and that he had not done any volunteer work. *Id.* at 36.

### 2.   Vocational Expert's Testimony

6   The ALJ called a vocational expert, Kathleen McApline (the "VE"), to testify at the

7   hearing. AR 47–53. The VE summarized Stimson's past work as "construction worker II, very

8   heavy, unskilled," "inventory, medium, unskilled," "materials handler, heavy, semi-skilled," and

9   "shipping, medium, skilled" under the Dictionary of Occupational Titles. *Id.* at 48.

10   In the first hypothetical, the ALJ asked the VE to consider an individual of Stimson's age,

11   education and work experience who is "limited to medium" with occasional climbing of ramps,

12   stairs, stooping, balancing, kneeling, crouching and crawling, needs a cane to walk and for uneven

13   terrain, cannot use ladders, ropes or scaffolds, and should have no exposure to atmospheric

14   conditions or extreme temperatures. *Id.* at 48–49. The VE testified that such an individual could

15   not perform Stimson's past work and could not perform any job "at medium." *Id.* at 49. On the

16   other hand, the VE testified that the hypothetical individual could work as a "security guard, light,

17   semi-skilled." *Id.*

18   In the second hypothetical, the ALJ kept the same limitations as the first hypothetical

19   individual, but limited to light instead of medium work. *Id.* The VE testified that the second

20   hypothetical individual cannot perform Stimson's past work. *Id.* She further testified that the only

21   jobs such an individual could perform were security guard and "dispatcher, sedentary, semi-

22   skilled," which the individual could do with "little, if any, vocational adjustment." *Id.* at 49–51.

23   When the ALJ added a further limitation that the individual "would be off-task 20 percent of the

24   time due to the need for additional breaks in addition to the normal breaks in an eight-hour

25   workday," the VE answered that there would be no full-time jobs available. *Id.* at 50.

26   In the third hypothetical, Stimson's attorney kept the same limitations as in the second,

27   with an additional limitation that the individual could only stand and walk for about four hours in

28   an eight hour work day. *Id.* at 52. The VE testified that such limitations would "reduce [work] to

United States District Court
Northern District of California

half." *Id.*

### D.    The ALJ's Analysis and Findings of Fact

#### 1.    Legal Standard for Determination of Disability

Disability insurance benefits are available under the Social Security Act when an eligible claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. §§ 423(a)(1), 1382c(a)(3). A claimant is only found disabled if his physical or mental impairments are of such severity that he is not only unable to do his previous work but also "cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); *see also* 42 U.S.C. § 1382c(a)(3). The claimant bears the burden of proof in establishing a disability. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir.), *cert. denied*, 519 U.S. 881 (1996).

The Commissioner has established a sequential five-part evaluation process to determine whether a claimant is disabled under the Social Security Act. 20 C.F.R. §§ 404.1520(a), 416.920(a). At Step One, the Commissioner considers whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, the Commissioner finds that the claimant is not disabled, and the evaluation stops. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to Step Two and considers whether the claimant has "a severe medically determinable physical or mental impairment," or combination of such impairments, which meets the duration requirement in 20 C.F.R. §§ 404.1509, 416.909. An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment, disability benefits are denied at this step. If it is determined that one or more impairments are severe, the Commissioner will next perform Step Three of the analysis, comparing the medical severity of the claimant's impairments to a compiled listing of impairments that the Commissioner has found to be disabling. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If one or a combination of the claimant's impairments meet

United States District Court
Northern District of California

8

or equal a listed impairment, the claimant is found to be disabled.  Otherwise, the Commissioner proceeds to Step Four and considers the claimant's residual functional capacity ("RFC") in light of his impairments and whether he can perform past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv); 20 C.F.R. §§ 404.1560(b), 416.960(b) (defining past relevant work as "work . . . done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it").  If the claimant can still perform past relevant work, he is found not to be disabled.  If the claimant cannot perform past relevant work, the Commissioner proceeds to the fifth and final step of the analysis.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  At Step Five, the burden shifts to the Commissioner to show that the claimant, in light of his impairments, age, education, and work experience, can perform other jobs in the national economy.  *Johnson v. Chater*, 108 F.3d 178, 180 (9th Cir. 1997).  A claimant who is able to perform other jobs that are available in significant numbers in the national economy is not considered disabled, and will not receive disability benefits.  20 C.F.R. §§ 404.1520(g), 404.1560(c)(1), 416.920(g), 416.960(c)(1).  Conversely, where there are no jobs available in significant numbers in the national economy that the claimant can perform, the claimant is found to be disabled.  *Id.*

### 2.    The ALJ's Five-Step Analysis

#### a.    Step 1: Substantial Gainful Activity

The ALJ began her analysis by noting that Stimson had no reported annual earnings since 2007.  AR 14.  The ALJ also noted that Stimson had worked part-time after the alleged onset date, but found that there was no evidence that "this work activity rose to the level of substantial gainful activity," and moved on to the second step.  *Id.* at 14–15.

#### b.    Step 2: Severe Impairments

The ALJ determined that Stimson had "the following severe impairments: degenerative disk disease of the lumbar spine with radiculopathy, status-post right knee surgery, obesity, and chronic obstructive pulmonary disorder."  AR 15.

The ALJ explained that obesity was a severe impairment combined with Stimson's severe musculoskeletal impairments.  *Id.*  The ALJ further explained that Stimson's hypertension, hyperlipidemia and psychiatric impairments were not severe impairments, because there was

United States District Court
Northern District of California

9

1    insufficient evidence that those conditions more than minimally affected Stimson's ability to

2    perform basic work functions.  *Id.*  The ALJ also noted that Stimson's hypertension was well

3    controlled, that hyperlipidemia was managed with diet, and that Stimson denied that depression

4    affected his ability to work.  *Id.*

5         The ALJ concluded by noting that with respect to Stimson's alleged psychiatric

6    impairment, Stimson had "no restriction in activities of daily living, no difficulties maintaining

7    social functioning, no difficulties in maintain concentration, persistence or pace, and no episodes

8    of decompensation of extended duration."  *Id.* (citing AR 244, 246, 261–62, 264, 266, 273, 275,

9    350, 472, 527–30).

10                          **c.      Step 3: Medical Severity**

11        The ALJ found that Stimson "does not have an impairment or combination of impairments

12   that meets or medical equals the severity of one of the listed impairments."  AR 16.

13        In reaching that conclusion, the ALJ considered listings 1.02 (major dysfunction of a

14   joint), 1.03 (reconstructive surgery or surgical arthrodesis of a major weight-bearing joint), 1.04

15   (disorders of the spine), 3.02 (COPD), and 14.09 (inflammatory arthritis).  *Id.*  The ALJ found that

16   because Stimson was able to ambulate effectively, Stimson's impairments did not meet or equal

17   listing 1.03 which requires inability to ambulate effectively.  *Id.*  With respect to listings 1.02,

18   1.04, 3.02, and 14.09, the ALJ simply described the requirements of the listings and conclusively

19   stated that there was no evidence in the medical record to establish that Stimson's impairments

20   met such requirements.  *Id.* at 16–17.  The ALJ cited to the COPD test results in her discussion of

21   listing 3.02, but otherwise did not cite to the medical record.  *Id.* at 17.

22                          **d.      Step 4: Residual Functional Capacity**

23        The ALJ determined that Stimson had

24            the residual functional capacity to perform light work as defined in
             20 C.F.R §§ 404.1567(b), 416.967(b), except he can occasionally
25            climb ramps and stairs but never climb ladders, ropes, and
             scaffolding. He can occasionally stoop, balance, kneel, crouch, and
26            crawl. The claimant requires the use of a cane for ambulation and
             for uneven terrain. He should not be exposed to atmospheric
27            conditions or to extreme temperatures.

28   AR 17.  Of the three sources of medical opinion in the record regarding Stimson's physical

United States District Court
Northern District of California

10

impairments, the ALJ gave little weight to the opinion of examining physician Dr. Chen as well as to the opinion of the treating physician Dr. Hoque, and partial weight to the state agency medical consultants. *Id.* at 19–20.

The ALJ first considered the June 2011 assessment of examining physician Dr. Chen, in which Dr. Chen concluded that Stimson had no functional limitations on a medical basis. *Id.* at 19. Although the ALJ found that Dr. Chen's opinion was supported by his examination and the objective record, she assigned little weight to Dr. Chen's assessment because "he did not give reasonable consideration to the claimant's self-reported limitations and subjective pain." *Id.*

The ALJ also looked to the two reports by state agency medical consultants from July 2011 and December 2011. *Id.* After briefly noting the findings from those reports, the ALJ assigned partial weight to the consultants' assessments without additional explanation. *Id.* at 19–20. She noted that her determination of Stimson's residual functional capacity was "essentially . . . adopted from the consultants' opinion but reduced from exertionally medium to light." *Id.* at 20.

The ALJ also considered the April 2012 opinion of treating physician Dr. Hoque. *Id.* She construed the opinion as stating that Stimson "was capable of less than sedentary activity." *Id.* The ALJ gave little weight to this opinion, explaining that Dr. Hoque's opinion was inconsistent with and not well supported by the Veteran Medical Center records or by the overall record and that the opinion was "quite conclusory, providing very little explanation of the evidence relied on in forming that opinion." *Id.* In rejecting this opinion, the ALJ cited to the medical record only once, referring generally to an eighty-eight page exhibit. *Id.*

In regards to Stimson's mental health, the ALJ considered the January 2012 consultative examination by Dr. von Bolschwing, in which Dr. von Bolschwing found no severe psychological limitations. *Id.* She also considered the February 2012 report of a state agency psychological consultant which concluded that Stimson's psychological disorders were not severe. *Id.* The ALJ assigned great weight to both opinions, noting that they were consistent with and supported by the overall record. *Id.* The ALJ also noted that Stimson denied mental health issues as a basis for his claims. *Id.* at 18.

Finally, the ALJ noted that the VE testified at the hearing that an individual with Stimson's

United States District Court
Northern District of California

1    residual functional capacity cannot perform Stimson's past relevant work, and accordingly, found

2    that Stimson was unable to perform past relevant work.  *Id.* at 21.

3                    e.       **Step 5: Ability to Perform Other Jobs in the National Economy**

4              The ALJ noted that the vocational expert testified that "an individual with the same age,

5    education, past relevant work experience, and residual functional capacity as the claimant" could

6    perform, without acquiring additional skills, "a light occupation such as a gate guard" and "a

7    sedentary occupation such as a dispatcher."  *Id.* at 22.  After also noting that these jobs exist in

8    significant numbers in the national and state economies, the ALJ found that Stimson had the

9    ability to perform other jobs in the national economy and that Stimson was not disabled.  *Id.*

10   **E.      Motions for Summary Judgment**

11            **1.       Stimson's Motion for Summary Judgment**

12            Stimson filed a complaint seeking review of the ALJ's decision by this Court, and moved

13   for summary judgment on the grounds that, first, the ALJ erred in determining that Stimson could

14   ambulate effectively; second, the ALJ failed to give proper weight to the opinion of Stimson's

15   treating physician; and third, the ALJ erred in giving great weight to the opinion of a

16   psychological assistant.  *See generally* Pl.'s Mot.

17            First, Stimson contends that the ALJ erred in determining that Stimson could ambulate

18   effectively because he requires a cane to walk.  *Id.* at 2, 4.  Stimson asserts that if the ALJ had

19   found that Stimson could not ambulate effectively, then his impairments would have satisfied the

20   requirements for disability in Step Three under listing 1.03 or 1.04.  *Id.* at 2, 8.[2]

21            Second, Stimson argues that the ALJ erred in disregarding the opinion of Stimson's

22   treating physician, Dr. Hoque, because the opinion is well supported by the record.  *Id.* at 5, 7.

23   According to Stimson, the ALJ gave little weight to Dr. Hoque's opinion because the ALJ

24   "deemed it unsupported by the record."  *Id.* at 5.  Stimson contends that the medical records of

25   "orthopedic surgeries, MRIs, diagnostic testing, physical therapy, [and] chart notes" as well as

26   diagnoses and prescriptions support Dr. Hoque's opinion, although Stimson provides no details as

27

28   ───────────────────
     [2] It is unclear from Stimson's Motion whether he seeks to establish disability under listing 1.03 or
     1.04, as he mentions only listing 1.04 initially but discusses only listing 1.03.

*United States District Court*
*Northern District of California*

to how those records support the opinion.  *Id.* at 5, 7.  Stimson also contends that the ALJ erred in giving less weight to Dr. Hoque's opinion than that of the state agency medical consultants "whose opinion is presumably based upon a review of the medical records."  *Id.* at 5.

Third, Stimson contends that the ALJ erred in assigning great weight to the opinion of Dr. von Bolschwing because she is not a licensed psychologist.  *Id.* at 6.  Stimson argues that because Dr. von Bolschwing is only a psychological assistant and not a licensed psychologist or another acceptable medical source, her opinion should be assigned little or no weight.  *Id.* (citing 20 C.F.R. § 404.1513).  Stimson asserts that it is irrelevant that Dr. von Bolschwing's report is signed by her licensed psychologist supervisor, Dr. Martin.  *Id.*  Stimson fails to explain, however, how assigning less weight to Dr. von Bolschwing's mental health evaluation would change the ALJ's conclusion, or what, if any, evidence in the record indicates that Stimson has a psychological impairment.

### 2.   Commissioner's Motion for Summary Judgment

The Commissioner filed a Cross-Motion for Summary Judgment, asking the Court to affirm the Commissioner's final decision that Stimson was not disabled.  *See generally* Comm'r's Mot.  The Commissioner responds to each of Castillo's arguments individually.

First, the Commissioner argues that there is no medical evidence that Stimson cannot ambulate effectively.  *Id.* at 4.  The Commissioner contends that although Stimson requires a cane to walk, the need for a single cane does not necessitate a finding of inability to ambulate.  *Id.* (citing 20 C.F.R. pt. 404, subpt. P, app. 1, 1.00(B)(2)(b)(2)).  The Commissioner also points to the ALJ's findings that Stimson could independently complete daily activities and to Stimson's testimony that he can walk for around 30 minutes.  *Id.* 4–5 (citing AR 15, 20).

Second, the Commissioner contends that the ALJ properly weighed the conflicting medical opinions, because Dr. Hoque's opinion was conclusory and not well supported.  *Id.* at 5–8.  According to the Commissioner, an ALJ may reject a treating physician's opinion only "by providing specific and legitimate reasons that are supported by substantial evidence."  *Id.* at 6 (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)).  The Commissioner contends that the ALJ correctly rejected Dr. Hoque's opinion because it was "conclusory in nature with very

United States District Court
Northern District of California

1    little explanation, unsupported by treating records or the record as a whole, and neither well

2    supported by medically acceptable clinical evidence nor by laboratory diagnostic techniques."  *Id.*

3    (citing AR 20; *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) ("When confronted

4    with conflicting medical opinions, an ALJ need not accept a treating physician's opinion that is

5    conclusory and brief and unsupported by clinical findings.")).  The Commissioner elaborates on

6    the ALJ's reasons by explaining that the "only" objective explanation provided by Dr. Hoque was

7    "positive [straight leg raise test], tender[ness] along the medial joint line at knee with positive

8    patellar grind, and the indication that [Stimson] received injections and physical therapy."  *Id.* at 7

9    (citing AR 561).[3]  The Commissioner further contends that she may offer "'additional support for

10   the Commissioner's and the ALJ's position' without inventing a new reason" and points to

11   specific portions of the medical record to support the ALJ's determination that Dr. Hoque's

12   opinion was unsupported by the record.  *Id.* at 7–8 (citing *Warre v. Comm'r of the Soc. Sec.*

13   *Admin.*, 439 F.3d 1001, 1005 n.3 (9th Cir. 2006); AR 19–20, 566, 590, 647, 693, 719–21).

14           Third, the Commissioner argues that the ALJ properly gave great weight to Dr. von

15   Bolschwing's opinion because it was consistent with and well supported by the record.  *Id.* at 8

16   (citing AR 20, 527–31).  The Commissioner argues that even though Dr. von Bolschwing was

17   only a psychological assistant, the fact that her licensed psychologist supervisor signed the report

18   validates the opinion as a proper medical opinion.  *Id.* (citing AR 531).  The Commissioner also

19   contends that Dr. von Bolschwing's opinion is still entitled to great weight even assuming that it is

20   not an acceptable medical source, because an uncontradicted "other source" opinion is entitled to

21   great weight.  *Id.* (citing AR 19, 87–89, 530).

22           Finally, the Commissioner contends that if the Court finds that the ALJ erred, then the

23

24   ───────────────────────────
     [3] The Commissioner also explains that Dr. Hoque's opinion was given "after only 6–9 months of
25   contacts with [Stimson] and relied on [Stimson's] knee and low back pain" and that "[w]hen asked
     to explain why she believed [Stimson's] limitations to be 'reasonably consistent' with his
26   impairments, she provided no explanation."  Comm'r's Mot. 7 (citing AR 561, 563).  However,
     this explanation seems to be a misreading of Dr. Hoque's opinion.  First, it seems that Dr. Hoque's
27   answer of "6–9 months" was referring to the frequency of her contact with Stimson, rather than
     the length of contact.  AR 561.  Second, Dr. Hoque did not provide an explanation because the
28   form did not call for an explanation if, as was the case here, Dr. Hoque believed Stimson's
     impairments and limitations were reasonably consistent.  AR 563.

1   Court should remand for further procedures and not for payment of benefits, so that "the entity

2   Congress entrusted with making disability determinations may correct any perceived errors."  Id.

3   at 9 (citing *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004)).

**III.    ANALYSIS**

     **A.    Legal Standard Under 42 U.S.C. §§ 405(g), 1383(c)(3)**

6        District courts have jurisdiction to review the final decisions of the Commissioner and

7   have the power to affirm, modify, or reverse the Commissioner's decisions, with or without

8   remanding for further hearings.  42 U.S.C. § 405(g); *see also* 42 U.S.C. § 1383(c)(3).

9        When asked to review the Commissioner's decision, the Court takes as conclusive any

10  findings of the Commissioner which are free from legal error and supported by "substantial

11  evidence."  42 U.S.C. § 405(g).   Substantial evidence is "such evidence as a reasonable mind

12  might accept as adequate to support a conclusion," and it must be based on the record as a whole.

13  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Substantial evidence means "more than a mere

14  scintilla," *id.*, but "less than a preponderance."  *Desrosiers v. Sec'y of Health and Human Servs.*,

15  846 F.2d 573, 576 (9th Cir. 1988).   Even if the Commissioner's findings are supported by

16  substantial evidence, they should be set aside if proper legal standards were not applied when

17  weighing the evidence and in reaching a decision.  *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir.

18  1978).  In reviewing the record, the Court must consider both the evidence that supports and

19  detracts from the Commissioner's conclusion.  *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir.

20  1996) (citing *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985)).

21       If the Court identifies defects in the administrative proceeding or the ALJ's conclusions,

22  the Court may remand for further proceedings or for a calculation of benefits.  *See Garrison v.*

23  *Colvin*, 759 F.3d 995, 1019−21 (9th Cir. 2014).

     **B.    Stimson's Ability to Ambulate Effectively**

25       The Social Security regulations provide the following definitions relevant to the issue of

26  whether a claimant can ambulate effectively:

27            (1) Definition. Inability to ambulate effectively means an *extreme*

28            *limitation of the ability to walk*; i.e., an impairment(s) that *interferes very seriously with the individual's ability to independently initiate,*

United States District Court
Northern District of California

United States District Court
Northern District of California

> *sustain, or complete activities*. Ineffective ambulation is defined
> generally as having insufficient lower extremity functioning (see
> 1.00J) to permit independent ambulation without the use of a hand-
> held assistive device(s) that limits the functioning of both upper
> extremities. (Listing 1.05C is an exception to this general definition
> because the individual has the use of only one upper extremity due
> to amputation of a hand.)
>
> (2) To ambulate effectively, individuals *must be capable of
> sustaining a reasonable walking pace over a sufficient distance to
> be able to carry out activities of daily living*. They must have the
> ability to travel without companion assistance to and from a place of
> employment or school. Therefore, examples of ineffective
> ambulation include, but are not limited to, the inability to walk
> without the use of a walker, two crutches or two canes, the inability
> to walk a block at a reasonable pace on rough or uneven surfaces,
> the inability to use standard public transportation, the inability to
> carry out routine ambulatory activities, such as shopping and
> banking, and the inability to climb a few steps at a reasonable pace
> with the use of a single hand rail. The ability to walk independently
> about one's home without the use of assistive devices does not, in
> and of itself, constitute effective ambulation.

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00(B)(2)(b) (emphasis added).  Administrative guidance

issued by the Social Security Administration further provides that "required use of one cane or

crutch [does not] automatically exclude all gainful activity.  However, if someone who uses one

cane or crutch is otherwise unable to effectively ambulate, the impairment(s) might still meet or

equal a listing."  Revised Medical Criteria for Determination of Disability, Musculoskeletal

System and Related Criteria, 66 Fed. Reg. 58010, 58013 (Nov. 19, 2001).

The fact that Stimson requires a prescribed cane to walk does not necessitate a finding of

inability to ambulate.  *See id.*  Stimson does not argue that he is "otherwise unable to effectively

ambulate."  *See id.*  To the contrary, the record indicates that Stimson often takes walks and is able

to independently shop for groceries and that he is able to use public transportation.  *Id.* at 15, 35,

43, 244, 264, 350, 530.  The Court therefore finds that Stimson is "capable of sustaining a

reasonable walking pace over a sufficient distance to be able to carry out activities of daily living"

and that Stimson's impairments do not reach the level of "extreme limitation of the ability to

walk."  20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00(B)(2)(b).  The ALJ properly found that Stimson

could ambulate effectively.

## C.      Credibility of Dr. von Bolschwing

In determining whether a claimant is disabled, an ALJ considers evidence from

16

"acceptable medical sources" such as licensed physicians or licensed certified psychologists.  20 C.F.R. § 404.1513(a).  An ALJ may also consider evidence from "other sources," including "medical sources not listed in paragraph (a) of this section (for example, nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists)."  20 C.F.R. § 404.1513(d).

Here, Dr. von Bolschwing is not a licensed psychologist, but rather a psychological assistant.  AR 531.  While Stimson argues that Dr. von Bolschwing's opinion should have been given little or no weight simply because she is not a licensed psychologist, the ALJ was entitled to consider and weigh Dr. von Bolschwing's evaluation even if it was only an "other source" medical opinion.  *See* 20 C.F.R. § 404.1513(a), (d).

Dr. von Bolschwing's report, indicating that Stimson has no severe mental impairments, is not contradicted by the record.  AR 530.  First, a state agency psychological consultant reached the same conclusion as Dr. von Bolschwing.  AR 88–89.  Further, the VA Medical Center records indicate that Stimson potentially suffers from anxiety and depression, but no psychological evaluation was conducted.  Finally, Stimson himself denied any mental health issues.  AR 18, 33, 302.  Thus, the Court finds that the ALJ did not err in assigning great weight to Dr. von Bolschwing's uncontradicted opinion.

    **D.**      **The Opinion of Dr. Hoque**

        **1.**      **Legal Standard for Opinions of Treating Physicians**

"Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)."  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  "[T]he opinion of a treating physician is . . . entitled to greater weight than that of an examining physician, [and] the opinion of an examining physician is entitled to greater weight than that of a non-examining physician."  *Garrison*, 759 F.3d at 1012.

"To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence."  *Ryan v. Comm'r of*

*Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citations omitted). The Ninth Circuit has recently

emphasized the high standard required for an ALJ to reject an opinion from a treating or

examining doctor, even where the record includes a contradictory medical opinion:

> "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be "entitled to the greatest weight . . . even if it does not meet the test for controlling weight." *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007). An ALJ can satisfy the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick* [*v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)]. "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citation omitted).
>
> Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs. *See Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996). In other words, an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion. *See id.*

*Garrison*, 759 F.3d at 1012−13 (footnote omitted).

If an ALJ has improperly failed to credit medical opinion evidence, a district court must

credit that testimony as true and remand for an award of benefits provided that three conditions are

satisfied:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Id.* at 1020. Under such circumstances, a court should not remand for further administrative

proceedings to reassess credibility. *See id.* at 1019−21. This "credit-as-true" rule, which is

"settled" in the Ninth Circuit, *id.* at 999, is intended to encourage careful analysis by ALJs, avoid

duplicative hearings and burden, and reduce delay and uncertainty facing claimants, many of

whom "suffer from painful and debilitating conditions, as well as severe economic hardship." *Id.*

18

at 1019 (quoting *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1398−99 (9th Cir. 1988)).  A court may remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.  A court may also remand for the limited purpose of determining when a claimant's disability began if that date is not clear from the credited-as-true opinion.  *See House v. Colvin*, 583 Fed. App'x 628, 629 (9th Cir. July 12, 2014) (citing, *e.g.*, *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010)).  Outside of those circumstances, remand for further proceedings is an abuse of discretion if the credit-as-true rule establishes that a claimant is disabled.  *Garrison*, 759 F.3d at 1020.

> **2.      The ALJ Erred in Assigning Little Weight to Dr. Hoque's Opinion**

Because Dr. Hoque is Stimson's treating physician, Dr. Hoque's opinion is entitled to substantial weight unless (1) the ALJ presented clear and convincing reasons to reject it, supported by substantial evidence, or (2) it was contradicted by other medical opinions and the ALJ provided specific and legitimate reasons to reject it, supported by substantial evidence.  *See Ryan*, 528 F.3d at 1198.

The ALJ rejected Dr. Hoque's opinion on the grounds that (1) the opinion was inconsistent with and not well supported by the Veteran Medical Center records or the record as a whole, and (2) the opinion was conclusory and provided "very little explanation of the evidence relied on." AR 20.  The Court finds that the ALJ erred in disregarding Dr. Hoque's opinion because neither of the two reasons offered by the ALJ was "specific and legitimate." *See Ryan*, 528 F.3d at 1198.

First, the ALJ concluded that Dr. Hoque's opinion was inconsistent with and not well supported by the record.  AR 20.  Although the Commissioner now expends great effort in elaborating on this conclusion by the ALJ, the standard that the Court must apply is whether the ALJ provided in her opinion "specific and legitimate reasons that are supported by substantial evidence." *See Garrison*, 759 F.3d at 1012.  Here, the ALJ failed to identify any specific inconsistencies between Dr. Hoque's opinion and the medical record, or otherwise provide any explanation of her assertion that the opinion was not supported by evidence.  AR 20.  Accordingly, the ALJ did not "set forth [her] own interpretations and explain why they, rather than [Dr.

1    Hoque's], are correct" but instead merely criticized the opinion "with boilerplate language that

2    fail[ed] to offer a substantive basis for [her] conclusion." *See id.*; *see also*, *Embrey v. Bowen*, 849

3    F.2d 418, 421 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient

4    objective findings or are contrary to the preponderant conclusions mandated by the objective

5    findings does not achieve the level of specificity our prior cases have required . . . .").

6         The Court also finds that Dr. Hoque's opinion is not substantially inconsistent with the

7    overall medical record, contrary to the ALJ's conclusion.  Dr. Hoque's opinion provides a detailed

8    assessment of Stimson's functional limitations, which, according to the ALJ, imply that Stimson is

9    capable of "less than sedentary work."  AR 20, 562–65.  The medical notes from the Veteran

10   Medical Center contain no inconsistencies with these assessments, and instead confirm Dr.

11   Hoque's diagnoses, clinical findings, and objective signs, as indicated in the opinion.  Dr. Hoque's

12   opinion is also consistent with Dr. Chen's opinion which reported no functional limitations

13   because Dr. Hoque's opinion indicates that Stimson's limitations described therein began only in

14   September 2011, while Dr. Chen's report is from June 2011.  AR 350, 565.

15        The only inconsistency with the record is the second state agency medical consultant report

16   from December 2011, which indicates much less severe functional limitations than Dr. Hoque's

17   opinion.  AR 91–92.  However, treating physician Dr. Hoque's opinion is entitled to greater

18   weight than the non-examining consultants' opinion.  *See Garrison*, 759 F.3d at 1012.

19   Furthermore, given that the medical consultants afforded great weight to Dr. Chen's opinion

20   which the ALJ herself rejected for failure to give reasonable consideration to Stimson's self-

21   reported limitations and subjective pain, the Court concludes that the ALJ's reliance on the

22   consultants—and thus, indirectly, on Dr. Chen's discredited opinion—is not a "legitimate" reason

23   to reject Dr. Hoque's opinion.  AR 19, 90; *see Garrison*, 759 F.3d at 1012.

24        The ALJ also noted that Dr. Hoque's opinion was merely conclusory and that Dr. Hoque

25   provided "very little" explanation for her assessment.  AR 20.  Citing *Tonapetyan v. Halter*, the

26   Commissioner argues that the ALJ was entitled to reject a treating physician's opinion that was

27   "conclusory and brief and unsupported by clinical findings."  Comm'r's Mot. at 6; *Tonapetyan v.*

28   *Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).  In *Tonapetyan*, a treating physician diagnosed the

United States District Court
Northern District of California

20

1   claimant with a variety of impairments and opined that the claimant could not perform sedentary

2   work.  *Id.*  The ALJ rejected this opinion because the physician's reports offered no objective

3   medical findings in support and the court affirmed the ALJ's decision after confirming that the

4   reports contained no objective evidence supporting the physician's opinion.  *Id.*

5          The Court finds, however, that this case is more similar to *Sanfilippo v. Astrue*.  274 Fed.

6   App'x 551, 552 (9th Cir. 2008).[4]  In *Sanfilippo*, the ALJ rejected the treating's physician's opinion

7   as brief, conclusory, and unsupported.  *Id.*  The court, however, noted that the record included the

8   physician's clinical findings, extensive descriptions of the claimant's pain management

9   consultations, and a thorough residual functional capacity questionnaire, and thus found that the

10  physician's opinion was "not brief, conclusory, or unsupported," contrary to the ALJ's decision.

11  *Id.*

12         Here, as in *Sanfilippo*, Dr. Hoque's opinion was a detailed residual functional capacity

13  questionnaire, accompanied by thorough medical records from the Veteran Medical Center.  *See*

14  AR 562–65; *Sanfilippo*, 274 Fed. App'x at 552.  Further, unlike in *Tonapetyan* where the opinion

15  offered no objective medical evidence at all, Dr. Hoque's opinion expressly points to clinical

16  findings and objective signs which are confirmed by the medical record.  *See* AR 562;

17  *Tonapetyan*, 242 F.3d at 1149.  The ALJ failed to discuss this objective medical evidence

18  provided by Dr. Hoque and instead simply labeled the opinion as "conclusory."  *Id.* 20.  The Court

19  therefore finds that the ALJ failed to "set forth specific, legitimate reasons" for disregarding Dr.

20  Hoque's opinion.  *See Garrison*, 759 F.3d at 1012.

21                  **3.      Dr. Hoque's Opinion Must be Credited as True**

22         As discussed above, the Ninth Circuit's "settled" credit-as-true rule dictates that where the

23  record has been fully developed, the ALJ has failed to provide sufficient reason to discredit a

24  medical opinion, and crediting that opinion would require a finding that the claimant is disabled, a

25  district court usually must remand for an award of benefits.  *Garrison*, 759 F.3d at 999, 1019−21.

26  The first and second conditions are satisfied here.  First, the Court finds that the record has been

27

28  ───────────────

    [4] Though *Sanfilippo* is non-precedential, the Court finds its reasoning persuasive.

United States District Court
Northern District of California

1   fully developed.  Further, as discussed above, the ALJ failed to provide sufficient reason to reject

2   Dr. Hoque's opinion.

3          The third criterion—whether crediting Dr. Hoque's opinion would require a finding that

4   Stimson is disabled—is more complicated.  Dr. Hoque's opinion indicates that Stimson can only

5   sit, stand, or walk for a total of six hours of a work day and requires unscheduled breaks every one

6   or two hours for fifteen minutes.  *Id.* at 562–65.  This corresponds to taking more than twenty

7   percent of the workday off.  At the hearing, the VE was asked to consider an individual of

8   Stimson's age, education, skills, and light functional limitations with occasional climbing of

9   ramps, stairs, stooping, balancing, kneeling, crouching and crawling, who needs a cane to walk

10  and for uneven terrain, cannot use ladders, ropes or scaffolds, and should have no exposure to

11  atmospheric conditions or extreme temperatures, who would also need to be off-task twenty

12  percent of the workday.  AR 49–50.  The VE testified that there are no jobs available in the

13  national economy for such an individual.  *Id.*  Dr. Hoque's opinion, credited as true, establishes

14  that Stimson's residual functional capacity is the same as this hypothetical individual, but with

15  more severe postural limitations.  *See id.* at 562–65.  Thus, the Court finds that the VE's testimony

16  applies to Stimson at the time of Dr. Hoque's opinion, and that there were no jobs available in the

17  national economy that he could perform at that time.

18         Under the statutory framework for disability benefits, however, not every impairment that

19  prevents a claimant from working necessarily meets the definition of "disability."  The law

20  requires that an impairment "has lasted or can be expected to last for a continuous period of not

21  less than 12 months." 42 U.S.C. § 423(d)(1)(A).  Here, Dr. Hoque's report establishes that

22  Stimson was unable to work beginning September 23, 2011.  *See* AR 565.  Stimson had surgery

23  on his knee in July of 2012—less than twelve months after the September onset date, and a few

24  months after Dr. Hoque rendered her opinion—and medical records indicate that he showed

25  improvement after the surgery.  *See id.* at 721.  Based on the record available, the Court cannot

26  conclusively determine whether Stimson remained unable to work after his surgery, and thus

27  whether his impairments constitute or constituted "disability" within the meaning of 42 U.S.C.

28  § 423(d)(1)(A).

United States District Court
Northern District of California

1  The Court therefore remands for further proceedings.  In keeping with the purposes

2  underlying the credit-as-true rule, the Commissioner is instructed on remand to accept Dr.

3  Hoque's diagnosis for the period from September 23, 2011 until Stimson's July 2012 surgery and

4  to devote further administrative proceedings to determining Stimson's ability to work after his

5  surgery.

6  **IV.     CONCLUSION**

7  For the reasons stated above, Stimson's Motion for Summary Judgment is GRANTED, the

8  Commissioner's Motion is DENIED, and the case is REMANDED for further proceedings

9  consistent with this Order.

10  **IT IS SO ORDERED.**

11  Dated: July 13, 2016

13  _____

14  JOSEPH C. SPERO
   Chief Magistrate Judge

23